# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LILIANA CORTEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-7322 |
| | ) | |
| v. | ) | Hon. Jorge L. Alonso |
| | ) | |
| AMAZON.COM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

After her employment with defendant Amazon.com, Inc. ("Amazon") ended, plaintiff Liliana Cortez ("Cortez") filed suit, alleging violations of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act. Defendant moves for summary judgment. For the reasons set forth below, the Court grants defendant's motion for summary judgment.

## I. BACKGROUND

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *See McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules."). When one party supports a fact with admissible evidence and the other party fails to controvert the fact with admissible evidence, the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). The Court does not consider

any facts that parties fail to include in their statements of fact, because to do so would rob the other party of the opportunity to show that the fact is disputed. In reviewing the parties' statements of facts, the Court considers any objections opposing parties make to the admissibility of evidence; but, where a party fails to make an objection, the objection is deemed waived for purposes of these motions for summary judgment.

In this case, only defendant submitted a statement of facts. Plaintiff is proceeding *pro se*, and defendant provided plaintiff the notice required under Local Rule 56.2. Plaintiff filed a lengthy response to defendant's motion and to defendant's statement of facts, but she did not file a statement of additional facts (which, of course, she is not required to do unless she wants the Court to consider additional facts). Based on the parties' filings, the following facts are undisputed unless otherwise noted.

Amazon operates a fulfillment center (the "warehouse") in Will County, Illinois. At the warehouse, Amazon receives inventory from manufacturers and third-party sellers and then ships purchased items to customers. Defendant runs four shifts at the warehouse: 1) Sunday through Wednesday from 7:00 a.m. to 5:30 p.m.; 2) Sunday through Wednesday from 7:00 p.m. to 5:30 a.m.; 3) Wednesday through Sunday from 7:00 a.m. to 5:30 p.m.; and 4) Wednesday through Sunday from 7:00 p.m. to 5:30 a.m. At the warehouse, defendant employs people in a number of positions, including: *sorters*, who receive products on a conveyor belt and sort them into tote boxes; *problem solvers*, who move from station to station with laptops to respond to and correct problems; *process assistants*, who support area managers; and *area managers*.

When Amazon hires a new employee, it provides a paper copy of its employment policies. Those policies include an equal employment opportunity ("EEO") policy, which states, among other things:

> there will be no discrimination against any associate . . . on the basis of race, religion, creed, color, national origin, citizenship . . . ancestry, the presence of any physical, sensory, or mental disabilities, or other legally protected status. . . . Any associate who believes he or she has been discriminat[ed] against or has suffered from harassment or retaliation for reporting discrimination or harassment should report it to his or her manager, or any member of management at Amazon, or to Human Resources.

(Def. Statement of Facts at ¶ 4). The EEO policy goes on to say that Amazon will conduct a "prompt investigation and will take appropriate corrective action as may be warranted." (*Id.* at ¶ 5). In addition, Amazon maintains a leave of absence policy, which states, among other things, "Employees must return to work when their leave is scheduled to end," because Amazon "will assume resignation of employment for employees who fail to return[.]" (*Id.* at ¶ 6). Amazon also maintains a drug policy, which states, among other things, that employees are "subject to periodic, random testing for the use of alcohol or drugs." In addition to providing papers copies of these policies, Amazon, during orientation, provided in-person training with respect to Amazon's EEO policy.

Defendant hired plaintiff in April 2016 to work in its warehouse. Defendant assigned plaintiff to work the night shift from Sunday through Wednesday. Plaintiff's initial job was as a sorter in the universal department, a department with multiple lanes of conveyor belts, where sorters scan items in tote boxes to ensure the accuracy of the contents.

In April or May 2016, not long after plaintiff started at the warehouse, she complained to Chris Garcia, a process assistant, about an incident. Plaintiff complained that a problem solver whose name plaintiff did not know had been rude to her. Specifically, plaintiff complained that she had asked the problem solver for help and, in response, the problem solver kicked plaintiff's totes and yelled, "[W]hat's wrong with this tote[?]" in plaintiff's face. Chris Garcia took plaintiff to speak with Area Manager Betsy La Fratta. Although plaintiff could not identify the

problem solver at the time, plaintiff, months later, identified the rude problem solver as Myeisha Holmes.

Plaintiff was not the only member of her family working at the warehouse. Plaintiff's sister also worked there, and when plaintiff told her sister she wanted to work in a different department, plaintiff's sister arranged for her to work in the Non-PID-Conveyable ("NPC") department, which handled expensive products, including laptop computers.

Occasionally, when the NPC department did not have work, plaintiff was moved back to the universal department. On one such occasion in April or May of 2016, plaintiff saw the rude problem solver (a still-unidentified Myeisha Holmes) standing "military style" and looking at her while she laughed with two friends. Later, in July or August, 2016, Myeisha Holmes was staring at plaintiff while speaking with an unidentified employee. Plaintiff heard the unidentified employee say, "I don't want this racist—prejudiced girl in my lane. I don't give a damn who she is." Plaintiff told a process assistant, LeCarr Mayweather ("Mayweather"), about the incident and asked to be moved. Together, plaintiff and Mayweather spoke with LeNece Glossett, of the human resources department. After that, plaintiff was moved, in her words, "far way" from where Myeisha Holmes and her friends were.

The next day, though, Myeisha Holmes' two friends were near plaintiff again. The two friends (who plaintiff eventually, although it is unclear when, identified as Ashley Harbor and Tiffany Taylor) were hitting totes against a wall and cursing while looking at plaintiff. Plaintiff, who perceived the conduct as stalking, told someone (possibly Mayweather) that she was scared, and that person moved plaintiff to a different area.

By August or September 2016, plaintiff had moved to the Prep department. In the Prep department, employees open incoming boxes and prepare the contents to be moved forward in

4

the shipping process. At some point after moving to the Prep department, plaintiff was again working in a lane near the two friends. The two friends stared at plaintiff, slammed totes and mumbled bad words. Plaintiff complained to a fellow employee, and word reached Glossett in human resources. Plaintiff was moved to, in her words, "a far away lane."

Glossett discussed the matter with plaintiff, who still could not identify anyone who had bothered her. Instead, plaintiff offered descriptions of their clothing and described them as "loud girls in Prep." Glossett consulted La Fratta and Mayweather, neither of whom confirmed plaintiff's allegations. They did, however, identify employees that matched plaintiff's descriptions. Glossett showed plaintiff pictures of the employees identified by La Fratta and Mayweather as matching plaintiff's descriptions, and, from the pictures, plaintiff identified Myeisha Holmes as a harasser. Glossett spoke with Myeisha Holmes, who denied harassing plaintiff. Plaintiff testified that every time she asked to change departments, the request was granted.

Plaintiff's next issues at work were with area manager Lloyd Taylor, who worked with plaintiff while plaintiff was assigned to the Prep department. First, plaintiff felt that Lloyd Taylor messed with her production rates. At Amazon, an employee's production rate measures the number of "units" (presumably of orders, but the parties do not say) she processes during a shift. An employee's production rate is important, because Amazon "writes up" employees whose rate of production falls below the tenth percentile. Plaintiff asked Lloyd Taylor about her production rate, and he told her he would follow up. Plaintiff asked another manager about production rates, and that manager told plaintiff that everyone's production rate was wrong. Plaintiff testified that she believes her production rate was eventually corrected.

5

Next, plaintiff was upset once when Lloyd Taylor pointed a laptop at her and laughed. It made plaintiff feel as if Lloyd Taylor were recording her, although she does not know if he was. Plaintiff was also upset, because Lloyd Taylor called her stupid. Plaintiff complained to Glossett. Glossett spoke to Lloyd Taylor, who denied calling plaintiff stupid and denied aiming a laptop at her and laughing at her.

In August or September 2016, plaintiff was selected for a drug test. Amazon had hired a third party to administer the drug tests. That third party randomly selects individuals for drug testing. On average, between 25 and 40 warehouse employees are subject to random drug tests each month. When she was selected, plaintiff saw Lloyd Taylor wringing his hands, like a villain.

On October 2, 2016, plaintiff heard an employee behind her say she "hates Mexicans" and that she was "there to take someone down." Plaintiff saw the employee looking at her and heard the employee say, "I'll take her and her sister down." Plaintiff went to the security department and spoke with, among others, La Fratta and Andy Taylor of human resources. Plaintiff was unable to identify the employee who had made the comment. (Plaintiff testified that she later, in 2017, learned the employee's name, which was Watson.) Plaintiff went home, and Andy Taylor asked employees in nearby lanes about the alleged incident. The employees Andy Taylor spoke to stated that they had not seen or heard any hostility.

On October 5, 2016, plaintiff sought treatment for anxiety and depression from Dr. William Campbell ("Dr. Campbell"). Days later, on October 10, 2016, plaintiff requested a leave of absence, retroactive to October 3, 2016.

By October 18, 2016, plaintiff provided defendant with information from Dr. Campbell, who stated plaintiff "had anxiety, panic attacks due to conflicts [with] co-workers," and that

6

plaintiff is "impaired during flares." Dr. Campbell stated that plaintiff could return to work on October 18, 2016 so long as she was "work[ing] in an area where co-workers that exacerbate illness are not around."

When plaintiff arrived at the warehouse on October 18, 2016, her security badge did not work to scan her in. That was because her badge had been disabled while she was on leave. Defendant, unaware that plaintiff would return that day, had not enabled the badge. Nonetheless, plaintiff proceeded to her locker, where she spotted Watson. Plaintiff was upset to see that Watson still worked for defendant. Plaintiff proceeded to human resources, where she had an anxiety attack, asked why Watson was still working there and left.

By October 19, 2016, Becky Carter ("Carter"), one of defendant's regional accommodations managers, was looking into potential accommodations for plaintiff. On that day, Carter emailed Glossett regarding Dr. Campbell's suggestion. They concluded it would not be realistic for defendant to move plaintiff every time she had a conflict with other employees.

On October 20, 2016, Carter telephoned plaintiff. Plaintiff told Carter plaintiff could not identify anyone who made her uncomfortable and that she did not feel comfortable anywhere at the warehouse. Carter told plaintiff she would work with human resources to determine what to do next.

Carter attempted to speak with Dr. Campbell and attempted to obtain plaintiff's assistance in reaching Dr. Campbell. Carter telephoned plaintiff's number on October 27, November 1, November 18 and December 14, 2016, but Carter did not reach plaintiff. Carter telephoned Dr. Campbell's office on November 8 and 25 and December 2, 9, 14 and 20 before finally speaking to Dr. Campbell on December 21, 2016. Dr. Campbell agreed with Carter that his proposed accommodation (keeping plaintiff away from the employees who increased her

anxiety) was probably not reasonable. Dr. Campbell offered no other accommodation suggestions other than having plaintiff sit down and talk with the alleged accusers.

Carter tried two times—on December 22, 2016 and on January 5, 2017—to telephone plaintiff to discuss that the proposed restrictions were not reasonable and to discuss the new suggestion her physician had made. Plaintiff did not answer, and Carter left voicemail messages. On January 18, 2017, Carter tried again to reach plaintiff in order to ask plaintiff to come in to discuss the situation. Carter did not reach plaintiff and left a message. In addition, on January 18, 2017, Carter sent plaintiff a letter requesting that plaintiff participate in the accommodation process.

On February 20, 2017, Carter telephoned plaintiff again, and this time plaintiff answered. When Carter identified herself, plaintiff hung up the telephone. Carter wrote to plaintiff again on March 16, 2017. In the letter, Carter asked plaintiff to telephone Carter. Plaintiff did not respond to the letter.

On March 31, 2017, Carter sent plaintiff another letter. This time, Carter told plaintiff that Amazon was returning her to work at the warehouse and that plaintiff would be switched to the Wednesday-through-Sunday schedule, with plaintiff having the choice between working days or nights. The letter gave plaintiff until April 7, 2017 to report to work and select the schedule she thought would best help her avoid the employees she hoped to avoid. Plaintiff testified that she was either ignoring or not paying attention to communications from Amazon.

When defendant did not hear from plaintiff by April 19, 2017, Glossett concluded that plaintiff had voluntarily resigned. Glossett sent plaintiff a letter informing her that she was separated from employment.

On October 31, 2016, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. She timely filed suit here.

During discovery for this case, plaintiff identified three individuals, Tanishia Covington, Brittany Covington and Jordan Hill, each of whom had been accused of a crime covered in the local news, as individuals who had harassed her while she worked at Amazon. It is undisputed that those three individuals never worked at the warehouse.

## II. STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). "As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).

## III. DISCUSSION

### A. Plaintiff's ADA claims

In her complaint, plaintiff alleges that defendant discriminated against her in violation of the Americans with Disabilities Act ("ADA") by failing to provide a reasonable accommodation.

The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to . . . the . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Included in the definition of discriminate is "not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). In order to establish a claim for failure to accommodate, the plaintiff must show: (1) she "is a qualified individual with a disability;" (2) "the employer was aware of the disability;" and (3) "the employer failed to reasonably accommodate the disability." *Equal Employment Opportunity Comm'n. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005); *see also Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 493 (7th Cir. 2014).

Plaintiff has not put forth evidence from which a reasonable jury could conclude that she has a disability within the meaning of the statute. The ADA defines "disability" as "a physical or mental impairment that *substantially limits one or more major life activities* of such individual." 42 U.S.C. § 12102(1)(A) (emphasis added). Plaintiff has put forth evidence of a mental impairment: she gave defendant documents in which Dr. Campbell stated that she "had anxiety, panic attacks due to conflicts [with] co-workers" and that plaintiff is "impaired during flares."

Plaintiff has put forth no evidence, however, as to whether or how this impairment substantially limits a major life activity. Major life activities under the ADA include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting,

bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). To establish she was substantially limited in the major life activity of working, for example, plaintiff had to put forth evidence that she was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 623 (7th Cir. 2012) ("This evidence does not have to be presented in quantitative form, but does require the presentation of general employment demographics or the approximate number of jobs (e.g., 'few', 'many', or 'most') from which an individual would be excluded because of an impairment.") (citations omitted).

Plaintiff has not put forth evidence that her anxiety restricted her ability to perform a class of jobs or a broad range of jobs from various classes. At best, plaintiff has put forth evidence that she could not work around particular individuals, but that does not establish an inability to perform a class of jobs and, thus, does not establish disability under the ADA. *Carothers v. County of Cook*, 808 F.3d 1140, 1148 (7th Cir. 2015) ("[I]nteracting with juvenile detainees is a *unique aspect* of the *single specific job* of working as a hearing officer at a juvenile correctional center. . . . Since the inability to interact with juvenile detainees does not restrict [plaintiff] from performing either a class of jobs or a broad range of jobs, she has not established that she is disabled within the meaning of the ADA."); *Palmer v. Circuit Court of Cook Cty., Ill.*, 117 F.3d 351, 352 (7th Cir 1997) ("[A] personality conflict with a supervisor or coworker does not establish a disability within the meaning of the disability law, even if it produces anxiety and depression, as such conflicts often do.") (internal citation omitted).

Accordingly, plaintiff has not put forth sufficient evidence from which a reasonable jury could conclude that she is disabled. That is reason enough to conclude that defendant is entitled

to judgment as a matter of law on plaintiff's failure-to-accommodate claim, but there is more. Plaintiff has not put forth evidence that defendant denied a reasonable accommodation. The accommodation her doctor suggested—moving her away from the employees who caused her anxiety—was not reasonable as a matter of law. *See Weiler v. Household Finance Corp.*, 101 F.3d 519, 526 (7th Cir. 1996) ("The ADA does not require [defendant] to transfer [plaintiff] to work for a supervisor other than [the one she dislikes]."); *Bradford v. City of Chi.*, 121 Fed. Appx. 137, 139 (7th Cir. 2005) (affirming district court's conclusion that "a transfer away from particular supervisors or co-workers is not required as a 'reasonable accommodation' under the ADA."). Furthermore, plaintiff is not entitled to the accommodation she *prefers*; she is entitled to some reasonable accommodation. *Gratzl v. Office of Chief Judges*, 601 F.3d 674, 681-82 (7th Cir 2010) ("An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation.") (quoting *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 546 (7th Cir. 2008); *Gile v. United Airlines*, 95 F.3d 492, 499 (7th Cir. 1996)). Ultimately, after months of attempting to communicate with plaintiff and her doctor about potential accommodations, defendant offered a reasonable accommodation similar to what plaintiff had requested: defendant offered to move her to the Wednesday to Sunday shift and gave her the option of working days or nights. Plaintiff did not respond. No reasonable jury could conclude that defendant violated the ADA.

For these reasons, defendant is entitled to judgment as a matter of law on plaintiff's ADA claim for failure to accommodate. Defendant's motion for summary judgment is granted as to that claim.

It is unclear whether plaintiff is also claiming defendant discharged her on the basis of her disability. The Seventh Circuit has concluded that proof of a discharge "on the basis of

disability" means disability was the but-for cause. *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). Thus, to prevail on this claim, plaintiff must show: (1) she is disabled; (2) she "was qualified to perform the essential functions with or without a reasonable accommodation;" and (3) disability was the but-for cause of [her] discharge. *Scheidler*, 914 F.3d at 541. As noted above, plaintiff has not created an issue of fact as to whether she is disabled within the meaning of the ADA, so this claim fails as a matter of law for that reason alone.

In addition, the claim fails, because plaintiff has not created an issue of fact as to whether disability was the but-for cause of the termination of her employment. It is undisputed that defendant, after months of attempting to reach plaintiff, informed plaintiff by letter on March 31, 2017 that she should return to work on April 7, 2017 for the Wednesday-to-Sunday schedule on the shift (days or nights) of plaintiff's choice. It is undisputed that plaintiff neither responded to the letter nor appeared on April 7, 2017. It is undisputed that defendant assumed plaintiff was resigning and treated her accordingly. Plaintiff has put forth no evidence from which a reasonable jury could conclude that she was discharged because of her disability.

Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's claim for disparate treatment under the ADA. Defendant's motion for summary judgment is granted as to that claim.

### B. Plaintiff's Title VII claims

Next, plaintiff's complaint asserts claims for harassment, disparate treatment and retaliation in violation of Title VII of the Civil Rights Act of 1964.[1]

---

[1] In her response to defendant's motion for summary judgment, plaintiff mentions OSHA, fraud and perjury. To be clear, plaintiff cannot amend her complaint in response to a motion for summary judgment. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for

### 1. Disparate treatment

Title VII of the Civil Rights Act of 1964 makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

With respect to plaintiff's disparate treatment claim, the question for this Court is "whether the evidence would permit a reasonable fact-finder to conclude that [plaintiff] was subjected to an adverse employment action based on a statutorily prohibited factor." *McCurry v. Kenco Logistics Serv., LLC*, 942 F.3d 783, 788 (7th Cir. 2019). Of course, the Seventh Circuit has not overruled the Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and, thus, the "*McDonnell Douglas* burden-shifting [remains] a viable option for pursuing employment discrimination claims." *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 629 (7th Cir. 2018).

The only two potential adverse actions apparent from the record are the drug test and the conclusion of plaintiff's employment.[2] A drug test is an adverse action only where it "is not performed in a routine fashion following the regular and legitimate practices of the employer, but [instead] is conducted in a manner that harasses or humiliates employees." *Stockett v. Muncie Indiana Transit Syst.*, 221 F.3d 997, 1001-02 (7th Cir. 2000); *see also Keys v. Foamex, LP*, 264 Fed.Appx. 507, 510-11 (7th Cir. 2008). Plaintiff argues that the drug test was discriminatory, because another person of Mexican descent was also chosen. Plaintiff believes the odds of that

---

summary judgment.'") (quoting *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002)). To the extent plaintiff is asking to add additional claims to her case, the request is denied.

[2] Plaintiff's concern that Lloyd Taylor messed with her production numbers is not an adverse action, because there is no evidence it resulted in discipline or otherwise affected the terms or conditions of her employment. In any case, plaintiff testified that she thought it was corrected after she asked about it.

happening are remote. The argument is not persuasive. Without evidence of the racial makeup of the workforce or of the rest of the individuals chosen for drug testing that month, her conclusion is mere speculation. It is undisputed that 25-40 warehouse employees were randomly chosen each month by a third party for drug testing. This is consistent with defendant's policy on random drug testing. Under these circumstances, drug testing does not constitute an adverse action.

In her complaint, plaintiff also alleges defendant terminated her employment on the basis of her race and/or color. Plaintiff has not put forth evidence from which a reasonable jury could conclude that the termination of her employment was based on color or race. Rather, the undisputed evidence is that, after months of trying unsuccessfully to communicate with plaintiff, defendant sent her a letter instructing her to return to work on April 7, 2017. When defendant had not heard from plaintiff by April 19, 2017, defendant assumed she was resigning and treated her accordingly. Plaintiff cannot show that she was constructively discharged, because, among other things, defendant told her she could work on the opposite schedule from what she had previously worked and would have the choice between days or nights. *See Wright v. Illinois Dep't. of Children and Family Services*, 798 F.3d 513, 527 (7th Cir. 2015) ("An employee is constructively discharged when, from the standpoint of a reasonable employee, the working conditions become unbearable. . . . The second form of constructive discharge 'occurs '[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated.'") (citations omitted). Nor has plaintiff identified a similarly-situated employee who was treated more favorably or put forth evidence that Amazon's conclusion that she had resigned was a pretext for discrimination.

In short, no reasonable jury could find for plaintiff on her claim for disparate treatment under Title VII. Defendant is entitled to summary judgment on this claim.

### 2. Hostile environment

The claim plaintiff focuses on in her response to defendant's motion for summary judgment is her claim for hostile environment. A hostile environment can violate Title VII if it alters the terms and conditions of employment on the basis of a protected class. *See Smith v. Illinois Dep't. of Trans.*, 936 F.3d 554, 560 (7th Cir. 2019). "A hostile work environment claim contains four elements: (1) the employee was subject to unwelcome harassment; (2) the harassment was based on a reason forbidden by Title VII—here, race; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment; and (4) there is a basis for employer liability." *Smith*, 936 F.3d at 560. "An employer may be strictly liable for harassment by supervisors, but a negligence standard applies for harassment by coworkers." *Jajeh v. County of Cook*, 678 F.3d 560, 568 (7th Cir. 2012). To hold an employer liable for harassment by a coworker, a plaintiff must show the employer "was negligent in either discovering or remedying the harassment." *Jajeh*, 678 F.3d at 569. Once an employer is aware of the harassment, "it can avoid liability by taking 'prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring.'" *Jajeh*, 678 F.3d at 569 (quoting *Vance v. Ball State Univ.*, 646 F.3d 461, 471 (7th Cir. 2011)). "[P]rompt investigation is the hallmark of corrective action," *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 392 (7th Cir. 2010) (citation omitted), and "success or failure stopping the harassment does not determine whether an employer is liable," *May v. Chrysler Group, LLC*, 716 F.3d 963, 971 (7th Cir. 2013).

Here, plaintiff's claim for hostile environment fails for a number of reasons. First, most of the incidents about which plaintiff complains are not actionable under Title VII. "Title VII imposes no 'general civility code,'" and comments that "may have made for a crude or unpleasant workplace" are not actionable unless they are connected to a protected class. *Smith*, 936 F.3d at 560-61 (directing profanity at plaintiff, calling him a "stupid dumb motherf[],'" and threatening to "kick [his] ass" did not violate Title VII because it was not connected to his race) (citations omitted); *see also Nicholson v. Allstate Ins. Co.*, 495 Fed.Appx. 716, 719 (7th Cir. 2012) ("These allegations, if true, suggest minor, isolated conduct not based on [plaintiff's] race, age, or sex, and thus do not constitute harassment."). Most of the incidents plaintiff complains about fall in this category. She complains that on four occasions over five or six months, Myeisha Holmes and/or her friends slammed, banged or kicked totes, mumbled bad words or cursed and laughed. Plaintiff has not put forth evidence that these incidents were connected to her protected class. Nor can plaintiff show a basis for employer liability for these incidents. Defendant maintains an EEO policy, and each time plaintiff complained, defendant investigated. The investigation was not made easier by plaintiff's inability to identify the culprits, but Glossett, from human resources, was able to show plaintiff photographs, at which point plaintiff was able to identify one harasser. In addition, defendant moved her away from the culprits. Plaintiff testified that each time she asked to be moved, her request was granted.

Plaintiff also complained that Lloyd Taylor called her stupid, but, again, Title VII is not a civility code. Plaintiff has not put forth evidence connecting Lloyd Taylor's comment to her protected class, so it is not actionable.

Plaintiff has, however, put forth evidence of one incident that is connected to her protected class. Plaintiff put forth evidence that, on October 2, 2016, plaintiff heard an employee

17

behind her say she "hates Mexicans" and that she was "there to take someone down." Plaintiff saw the employee looking at her and heard the employee say, "I'll take her and her sister down." Plaintiff immediately complained to security and to La Fratta and Andy Taylor. Plaintiff, who went home after the incident, did not identify the person who made the comment. No reasonable jury could conclude that defendant was negligent with respect to this incident. Andy Taylor immediately investigated by questioning employees in nearby lanes, but the employees to whom he spoke said they had not seen or heard the incident. Plaintiff immediately took a leave of absence. When she returned (unexpectedly) on October 18, 2016, she was upset to see the culprit still working at Amazon. Plaintiff, though, had not identified the culprit, and Amazon's investigation had not led it to one. Amazon then attempted for months to reach plaintiff and eventually offered to move her to a different schedule on her choice of shifts (day or night). Under these circumstances, no reasonable jury could conclude that Amazon was negligent.

Defendant is entitled to judgment as a matter of law on plaintiff's claim for hostile environment. Defendant is granted summary judgment on that claim.

### 3. Retaliation

Finally, in her complaint, plaintiff asserts a claim for retaliation, presumably in violation of Title VII of the Civil Rights Act of 1964.

To make out a *prima facie* case of retaliation, plaintiff must show: "(1) he engaged in statutorily protected activity; (2) his employer took a materially adverse action against him; and (3) there is a causal link between the protected activity and the adverse action." *Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019). This requires proof "that the desire to retaliate was the but-for cause of the challenged employment action." *University of Tex. SW Medical Center v. Nassar*, 570 U.S. 338, 352 (2013); *Mollet*, 926 F.3d at 897 ("the question is not . . .

whether [the protected conduct] was *a* but-for cause of the adverse action [but] rather whether the protected activity was *the* but-for cause of the adverse action."). If defendant articulates a legitimate, non-discriminatory reason for the action, the plaintiff "must produce evidence that would permit a trier of fact to [conclude], by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons but were a pretext for discrimination." *Robertson v. Wisconsin Dep't. of Health Services*, 949 F.3d 371, 378 (7th Cir. 2020).

The standard for an adverse action on a retaliation claim is different from the standard on a disparate treatment claim. A materially adverse action for purposes of a retaliation claim is one that would cause "a reasonable employee [to] have been deterred from making or supporting an investigation of discrimination." *Robertson*, 949 F.3d at 382 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Perhaps a drug test could be materially adverse for purposes of a retaliation claim, but here it is undisputed that plaintiff was randomly selected by a third party for the test. Plaintiff has put forth no evidence from which a reasonable jury could conclude that she was selected for having complained about the way other employees had treated her. The same is true of the termination of plaintiff's employment. It is undisputed that, after unsuccessfully attempting to reach plaintiff for months, defendant sent plaintiff a letter telling her to report for work on April 7, 2017. When defendant had not heard from her by April 19, 2017, it assumed she was resigning and acted accordingly. Plaintiff has not put forth evidence that a similarly-situated employee who had not complained was treated more favorably, and plaintiff has not put forth evidence that defendant did not genuinely believe plaintiff had abandoned her job. Plaintiff has put forth nothing from which a reasonable jury could find a causal connection between her complaints and the end of her employment.

Defendant is entitled to judgment as a matter of law on plaintiff's retaliation claim.

Defendant is granted summary judgment on plaintiff's Title VII claims.

## IV. CONCLUSION

For all of these reasons, the Court grants defendant's motion [92] for summary judgment.

Civil case terminated.

SO ORDERED.                                   ENTERED: March 25, 2020

                                                                       JORGE L. ALONSO
                                                                       United States District Judge